**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MOHAMED A. SHARKAWY | : | |
| PLAINTIFF, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | |
| ROSENBERGER NORTH | : | |
| AMERICA, LLC. a/k/a | : | |
| ROSENBERGER, N.A., | : | Jury Trial Demanded |
| DEFENDANT. | : | |
| | : | |

**COMPLAINT**

Plaintiff, Mohamed A. Sharkawy, by and through his counsel, brings this action against Defendant Rosenberger North American LLC. a/k/a Rosenberger, N.A. ("Rosenberger") because Rosenberger unlawfully terminated Plaintiff's employment. Plaintiff seeks to secure relief, legal and equitable, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* ("Title VII") and 42 U.S.C. § 1981 ("§ 1981") as well as state claims arising under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq* ("PHRA").

**JURISDICTION**

1. The jurisdiction of this Court over COUNTS ONE, TWO, THREE and FOUR of this controversy is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that this District Court has original jurisdiction of all civil actions arising under the laws of the United States.

2. The federal law to be enforced in COUNTS ONE and TWO is Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*

3. The federal law to be enforced in COUNTS THREE and FOUR is 42 U.S.C. §1981.

4. The jurisdiction of this Court over COUNTS FIVE and SIX of this controversy is based upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

5. The law to be enforced in COUNTS FIVE and SIX is the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq* ("PHRA").

### VENUE

6. Venue is appropriate in this district pursuant to §28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### PARTIES & AGENTS

7. Mohamed Sharkawy ("Mr. Sharkawy" or "Plaintiff") is an adult citizen of the Commonwealth of Pennsylvania who resides in Lancaster County, Pennsylvania.

8. Plaintiff Sharkawy was born in April 1959.

9. Plaintiff is white-Middle Eastern, Egyptian, and Arabic.

10. Plaintiff has an accent that is different from white, European-Americans.

11. English is Plaintiff's second language, with Arabic his native language.

12. Defendant Rosenberger, North America LLC., a/k/a Rosenberger, N.A. ("Rosenberger" or "Defendant") is a company headquartered in Plano Texas at 1100 Professional Drive, Suite 100, Plano, Texas 75074

13. Defendant Rosenberger has sales and manufacturing facilities within the United States and Canada.

14. Defendant Rosenberger has a facility in Akron, Pennsylvania in Lancaster County, Pennsylvania. ("Akron Facility")

15. The mailing address for the Akron Facility operated by Defendant is 309 Colonial Drive, Akron, PA 17501.

16. Rosenberger is in the field of RF (Radio Frequency) coaxial connectors, standard and custom RF cable assemblies, RF test and measurement devices, automotive products, fiber optic products and custom copper assemblies.

17. Defendant Rosenberger is an employer within the meaning of 42 U.S.C. §2000e(b).

18. Defendant Rosenberger is an employer within the meaning of the Pennsylvania Human Relations Act, 43 P.S. § 954(b).

19. Plaintiff Sharkawy was employed by Defendant Rosenberger from approximately October 4, 2004 through January 25, 2018 ("Plaintiff's period of employment").

20. Plaintiff Sharkawy worked at Defendant's Akron Facility for the duration of his period of employment.

21. Andreas Ruzic is an adult individual who was employed by Defendant during Plaintiff's period of employment.

22. Mr. Ruzic was Chief Executive Officer/Chief Operating Officer of Defendant during Plaintiff's period of employment.

23. Mr. Ruzic acted as an agent of Defendant during Plaintiff's period of employment.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

24. Plaintiff Sharkawy filed an employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2018-04899 on July 17, 2018.

25. Plaintiff's EEOC Charge was simultaneously filed with the Pennsylvania Human Relations Commission ("PHRC").

26. The EEOC issued a dismissal and right to sue notice to Plaintiff dated February 19, 2019.

27. Plaintiff Sharkawy exhausted applicable administrative remedies for his claims.

**ADDITIONAL FACTUAL ALLEGATIONS**

**A. PLAINTIFF, AN ACCOMPLISHED ENGINEER, IS EMPLOYED AS A FULL-TIME APPLICATIONS ENGINEER FOR DEFENDANT, STARTING IN APPROXIMATELY OCTOBER 2004.**

28. Plaintiff was born in Egypt in April 1959.

29. Plaintiff immigrated to the United States when he was approximately 23 years old.

30. Plaintiff joined the US Army and was honorably discharged around 1988.

31. Plaintiff has a bachelor's and master's degree in Electrical Engineering.

32. Prior to working for Defendant, Plaintiff worked for 19 plus years with W.L. Gore & Associates, a manufacturing company specializing in products derived from fluoropolymers.

33. Plaintiff worked as an engineer for W.L. Gore & Associates.

34. Plaintiff performed his work as an engineer for W.L. Gore & Associates in a satisfactory manner.

35. Defendant Rosenberger hired Plaintiff Sharkawy on about October 4, 2004.

36. Defendant Rosenberger hired Plaintiff on a full-time basis, and he worked full-time throughout his period of employment.

37. Plaintiff's job position throughout his employment with Defendant was as an Applications Engineer.

38. Throughout Plaintiff's employment he worked at Defendant's Akron Facility.

39. Plaintiff was qualified for his job as an Applications Engineer with Defendant.

40. Plaintiff had two immediate supervisors during his employment with Defendant.

41. Plaintiff's first supervisor was Jihan Mohammed.

42. Mr. Mohammed supervised Plaintiff from Plaintiff's time of hire until approximately March 1, 2017.

43. Mr. Mohammed is Iraqi of Kurdish origin.

44. Plaintiff's second supervisor was Jac Havener.

45. Mr. Havener supervised Plaintiff from approximately March 1, 2017 through January 25, 2018 (Plaintiff's termination date).

46. Mr. Havener is white-European-American, U.S. born, and non-Arabic.

**B. PLAINTIFF WORKS SUCCESSFULLY FOR DEFENDANT IN A NON-HOSTILE WORK ENVIRONMENT FOR APPROXIMATELY TEN YEARS, FROM OCTOBER 2004 THROUGH AUGUST 2014.**

47. Plaintiff worked in Defendant's Akron facility throughout his period of employment.

48. However, from October 2004 through July 2014, approximately, Plaintiff's job did not require him to work with Andreas Ruzic.

49. From October 2004 through July 2014, approximately, Andreas Ruzic did not work for Rosenberger or at Defendant's Akron facility.

50. During the time period from October 2004 through July 2014 approximately, Jihan Mohammed and Steve Sacco were Plaintiff's primary management at the Akron Facility.

51. During the time period from October 2004 through July 2014 approximately, Plaintiff was not treated differently by either Mr. Mohammed or Mr. Sacco than Plaintiff's non-white-Middle Eastern, non-Egyptian, and non-Arabic peers.

52. Plaintiff was responsible for test and measurement of product development during his employment with Defendant.

53. Some of Plaintiff's work accomplishments include:

a.  Initiated the relationship with W.L. Gore & Associates, championing the technical communication and relationship, designed Gore cable to be used with Rosenberger established products, facilitated the desire of Gore to use Rosenberger as contract manufacturer;

b.  Designed, programed and validated a complete system to delay/phase match Gore and Rosenberger microwave products;

c.  Implementing design of economical 1mm connector for UT 031/034 and UT 047 type semi-rigid cable;

d.  Conceptualizing a new type of probe station test cable that combines semi-rigid and flexible coax cable assemblies with operate up to 70 GHz with great manufacturing yield;

e.  Improving packaging for VNA and NMD (test port) connectors that exceed the specification for ATM market and introduced VNA products specific to Keysight.

f.  Extending the bandwidth of several stock connectors by optimization and improvement of the manufacturing process and some of the internal components;

g.  Introduced new line of products known as Rmor (Rugged and flexible) available for bandwidth from DC to 70GHz using connectors with custom precision interfaces;

h.  Identify, designed and support VNA private labeling products for Anritsu.

i.  Introduced new line of products known as APSK (Amplitude Phase Stable Kable) available for bandwidth from DC to 70GHz using connectors with custom precision interfaces;

j.  Designed and implemented a manufacturing system for delay matching of coaxial assemblies in pairs, lots, relative, or absolute delay;

k.  Championed the daily responsibility of research and development project flow, and directed manufacturing test lab for training and procedure documentation to ensure AS 9100 compliance; and

l.  Created a cost matrix price calculator for Defendant Test & Measurement products, for new product introduction, for contract manufacturing, and for private labeling accounts.

54. Throughout Plaintiff's period of employment, his job performance was at an excellent, and top-level performance.

**C.  ANDREAS RUZIC BEGINS WORKING AT THE AKRON FACILITY IN APPROXIMATELY AUGUST 2014.**

55. Around August 2014, Andreas Ruzic started working at Defendant's Akron facility.

56. Mr. Ruzic is Croatian.

57. Mr. Ruzic was responsible for the overall supervision of the Akron facility from approximately August 2014 through Plaintiff's termination on January 25, 2018.

**D.  MR. RUZIC TREATS PLAINTIFF IN A RACIALLY BIASED MANNER BECAUSE PLAINTIFF IS WHITE-MIDDLE EASTERN, EGYPTIAN, AND ARABIC.**

58. Mr. Ruzic's behavior towards Plaintiff was hostile.

59. Mr. Ruzic did not engage in the same hostile behavior towards Plaintiff's co-workers who were not White-Middle Eastern, Egyptian, and Arabic.

60. One example of Mr. Ruzic's hostility towards Plaintiff occurred in weekly project meetings.

61. Approximately 5 individuals (on average) would attend the weekly project meetings.

62. Mr. Ruzic and Plaintiff attended the weekly project meetings.

63. Plaintiff was the only individual who was White-Middle Eastern, Egyptian, and Arabic at the weekly project meetings.

64. During the weekly project meetings, Mr. Ruzic:

   a. Spoke to Plaintiff as if he were a child

   b. Looked at Plaintiff with a smirk

   c. Used demonstrative and exaggerated physical motions towards Plaintiff

   d. Had more "heated" discussions with Plaintiff

   e. Would make fun of Plaintiff and create a tension;

   f. Spoke in a loud voice to Plaintiff

   g. Spoke over Plaintiff

65. In contrast, during the weekly project meetings, Mr. Ruzic behaved towards his non-White/Middle Eastern, non-Egyptian, and non-Arabic supervisees by:

   a. Speaking to them as an adult

   b. Giving them a welcoming smile

   c. Patiently and professionally listened to them

   d. Expressed disagreement in a non-confrontational manner towards them;

   e. Took them seriously

   f. Spoke in a normal tone of voice

   g. Allowed them to speak without interruption

66. Mr. Ruzic also used ethnic names to refer to Plaintiff, such as "Mario" and "my Italian friend."

67. Mr. Ruzic started to use the Italian ethnic names to refer to Plaintiff after Plaintiff had innocently shared with Mr. Ruzic that his (Plaintiff's) daughter took a DNA test concluding she was 19% Italian.

68. Mr. Ruzic did not refer to non-White/Middle Eastern, non-Egyptian, and non-Arabic employees using ethnic names.

69. Mr. Ruzic's use of ethnic names to refer to Plaintiff shows Mr. Ruzic's racial bias towards Plaintiff.

70. Mr. Ruzic's bias based on ethnicity is also evidenced by Mr. Ruzic's failing to be concerned about Defendant paying employees from Nepal differently than U.S. born workers for the same job.

**E. PLAINTIFF COMPLAINS ABOUT THE RACE-BASED HARASSMENT TO JIHAN MOHAMMED.**

71. Around September/October 2017, Plaintiff complained to Jihan Mohammed about Mr. Ruzic's racially hostile manner towards him. ("Complaint to Defendant")

72. At this time, Mr. Mohammed was a management official of Defendant.

73. Plaintiff, in his complaint to Defendant, told Mr. Mr. Mohammed that Mr. Ruzic behavior towards Plaintiff was hostile and inappropriate.

74. Plaintiff, in his complaint to Defendant, told him that he was being discriminated against by Mr. Ruzic.

75. Plaintiff, in his complaint to Defendant, asked Mr. Mohammed to speak to Mr. Ruzic about Mr. Ruzic's hostile behavior.

76. Plaintiff indicated to Mr. Mohammed that Plaintiff just wanted Mr. Ruzic to stop treating Plaintiff so antagonistically.

77. Mr. Mohammed indicated to Plaintiff that he (Mr. Mohammed) would follow-up with Mr. Ruzic about Plaintiff's complaints.

**F.  Mr. Ruzic continues his racially biased treatment and words towards Plaintiff**

78. Upon information and belief, Mr. Mohammed communicated Plaintiff's complaints to Mr. Ruzic.

79. However, Mr. Ruzic continued the actions described in ¶64 through ¶69 towards Plaintiff.

80.  Mr. Ruzic also acted even more antagonistically towards Plaintiff after Plaintiff's Complaint, for example, on January 11, 2018, two weeks before Plaintiff's termination, Mr. Ruzic jokingly referred to Plaintiff as "Giuseppe" multiple times at the beginning of a group meeting in front of others.

81. Mr. Ruzic, at the meeting on January 11, 2018, continued to interrupt Plaintiff, pointed his finger at him, and yelled at him.

82. Mr. Ruzic also tried to make Plaintiff feel humiliated in front of the other members of the meeting, including requiring another manager to send a group email after the meeting to Plaintiff, referred to as Giuseppe.

83. Mr. Ruzic also insulted Plaintiff by falsely accusing Plaintiff of achieving an accomplishment through bribing someone.

**G.  Defendant terminates Plaintiff's employment on January 25, 2018, claiming to eliminate Plaintiff's position in a reduction in force and retaining a white-European American, U.S. Born, non-Arabic employee, Randy Rhodes.**

84. On January 25, 2018, Defendant terminated Plaintiff's employment effective January 26, 2018.

85. Defendant advised Plaintiff the termination was due to a company re-organization and that his position of Application Engineer was eliminated.

86. At the time of termination, Defendant had three Application Engineer positions.

87. At the time of termination, the three Application Engineers working at the Akron facility were Plaintiff, Kyle Hoffman, and Randy Rhodes.

88. Kyle Hoffman is white-European-American, U.S. born.

89. Randy Rhodes is white-European-American, U.S. born.

90. Defendant terminated 2 of the 3 Application Engineer positions on around January 25, 2018.

91. Defendant retained Randy Rhodes, white-European-American and U.S. born, in employment as an Application Engineer.

92. Upon information and belief, the individual responsible for selecting Plaintiff for termination/lay-off was Mr. Ruzic.

93. Defendant advised Plaintiff of his termination on the 25th without any prior notice that they were considering lay-offs.

94. Defendant could not give Plaintiff any specific reason why he was selected for lay-off.

**H. DEFENDANT'S RATIONALE FOR TERMINATING PLAINTIFF IS PRETEXT BECAUSE DEFENDANT REHIRED FOR PLAINTIFF'S POSITION, ULTIMATELY FILLING IT WITH A WHITE-EUROPEAN AMERICAN, U.S. BORN INDIVIDUAL, JOHN WEAVER.**

95. After Defendant informed Plaintiff his position was eliminated, Defendant took steps to fill the same Applications Engineer position Plaintiff held.

96. Defendant attempted to fill the position Plaintiff held with Mr. Xin Xu.

97. After terminating Plaintiff, Defendant offered Plaintiff's former position to Mr. Xin Xu.

98. Mr. Xin Xu is not in Plaintiff's protected class of white-Middle Eastern, Egyptian, and Arabic.

99. Ultimately Mr. Xin Xu did not accept the position with Defendant.

100.    However, Defendant then filled the position held by Plaintiff with Mr. John Weaver, and individual who is not white-Middle Eastern, Egyptian or Arabic.

101.    Defendant's use a different name for the position held by Mr. Weaver.

102.    The different position name is Product Engineer.

103.    However, the job duties of the Application Engineer position held by Plaintiff and the Product Engineer position held by Mr. Weaver are essentially the same.

104.    Defendant's rationale for Plaintiff's termination is pretext.

### JURY DEMAND

105.    Plaintiff herein demands a trial by jury of all issues herein.

### CAUSES OF ACTION

### COUNT ONE

**42 U.S.C § 2000*e et seq.* – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT ROSENBERGER, N.A.**

**(DISPARATE TREATMENT DISCRIMINATION– RACE/COLOR/NATIONAL ORIGIN)**

106.    Plaintiff incorporates by reference paragraphs 1 through 105.

107.    Plaintiff is white-Middle Eastern, Egyptian, and Arabic.

108.    Plaintiff was qualified for his employment with Defendant.

109.    Defendant terminated Plaintiff's employment by permanently laying him off on January 25, 2018.

110.    Plaintiff's color, national origin and race was a determinative factor in Defendant's decision to terminate Plaintiff's employment.

111.    Upon information and belief, Mr. Ruzic knew that federal law prohibits discrimination based on race, color, and national origin in employment decisions.

112.    Mr. Ruzic acted with malice and reckless indifference to Plaintiff's federally protected rights justifying an award of punitive damages against Defendant.

## COUNT TWO

### 42 U.S.C § 2000*e et seq.* – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT ROSENBERGER N.A.

### (RETALIATION)

113.    Plaintiff incorporates by reference paragraphs 1 through 112.

114.    Plaintiff complained to Jihan Mohammed about Andreas Ruzic's hostile manner towards Plaintiff.

115.    At the time of Plaintiff's complaint to Mr. Mohammed, Mr. Mohammed was part of Defendant's management.

116.    Plaintiff asked Mr. Mohammed to talk to Mr. Ruzic about how he (Ruzic) treated Plaintiff in a hostile manner different from his treatment of US born/white and non-Arab employees.

117.    Plaintiff asked Mr. Mohammed to ask Mr. Ruzic to treat Plaintiff similarly to his US born and non-Arab co-workers.

118.    Plaintiff engaged in protected activity by complaining to Mr. Mohammed and seeking redress from Defendant for the ethnically based hostile treatment of Mr. Ruzic towards Plaintiff.

119.    Upon information and belief, Mr. Mohammed did communicate to Mr. Ruzic about Plaintiff's complaint against him.

120.    Mr. Ruzic continued to treat Plaintiff in a hostile manner after Plaintiff's complaint.

121.    Mr. Ruzic also engaged in more antagonistic behavior towards Plaintiff, including at the meeting on January 11, 2018.

122.    Upon information and belief, Defendant also selected Plaintiff for termination after Plaintiff's complaint.

123.    Defendant's selecting Plaintiff for lay off and terminating Plaintiff's employment was a materially adverse employment action.

124.    There was a causal connection between Plaintiff's protected activity of complaining about Mr. Ruzic's behavior and Defendant's selection for termination.

125.    Upon information and belief, Mr. Ruzic knew that federal law prohibits retaliation for employee complaints to management officials of discrimination based on race, color, and national origin.

126.    Mr. Ruzic acted with malice and reckless indifference to Plaintiff's federally protected rights justifying an award of punitive damages against Defendant.

127.    Plaintiff suffered damages because of Defendant's unlawful act.


### COUNT THREE

**42 U.S.C § 1981 –RACE DISCRIMINATION IN EMPLOYMENT AGAINST DEFENDANT ROSENBERGER N.A.**

**(DISPARATE TREATMENT)**

128.    Plaintiff incorporates by reference paragraphs 1 through 127.

129.    42 U.S.C. § 1981a states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

130.     Plaintiff is of Arab descent and ancestry.

131.     Plaintiff is a member of a "race" entitled to protections under 42 U.S.C. § 981. *See*

*St. Francis College v. Al-Khazraji,* 481 U.S. 604, 609-10 (1987)(holding the plaintiff of

Arab descent entitled to protection under §1981).

132.     Defendant terminated Plaintiff's employment on January 25, 2018.

133.     Plaintiff was qualified for his position with Defendant.

134.     Defendant's rationale for terminating Plaintiff's employment is pretext for

discrimination.

135.     Plaintiff's race was a determinative factor in Defendant's decision to terminate

him.

136.     Upon information and belief, Mr. Ruzic knew that federal law prohibits

discrimination based on race in employment decisions.

137.     Mr. Ruzic acted with malice and reckless indifference to Plaintiff's federally

protected rights justifying an award of punitive damages against Defendant.

138.     Plaintiff suffered damages because of Defendant's unlawful act.

## COUNT FOUR

### 42 U.S.C § 1981 – RETALIATION AGAINST DEFENDANT ROSENBERGER N.A.

139.     Plaintiff incorporates by reference paragraphs 1 through 138.

140.     Plaintiff complained to Jihan Mohammed about Andreas Ruzic's hostile manner

towards Plaintiff.

141.    At the time of Plaintiff's complaint to Mr. Mohammed, Mr. Mohammed was part of Defendant's management.

142.    Plaintiff asked Mr. Mohammed to talk to Mr. Ruzic about how he (Ruzic) treated Plaintiff in a hostile manner different from his treatment of non-Arab employees.

143.    Plaintiff asked Mr. Mohammed to ask Mr. Ruzic to treat Plaintiff similarly to his non-Arab co-workers.

144.    Plaintiff engaged in protected activity by complaining to Mr. Mohammed and seeking redress from Defendant for the ethnically based hostile treatment of Mr. Ruzic towards Plaintiff.

145.    Upon information and belief, Mr. Mohammed did communicate to Mr. Ruzic about Plaintiff's complaint against him.

146.    Mr. Ruzic continued to treat Plaintiff in a hostile manner after Plaintiff's complaint.

147.    Mr. Ruzic also engaged in more antagonistic behavior towards Plaintiff, including at the meeting on January 11, 2018.

148.    Upon information and belief, Defendant also selected Plaintiff for termination after Plaintiff's complaint.

149.    Defendant's selecting Plaintiff for lay off and terminating Plaintiff's employment was a materially adverse employment action.

150.    There was a causal connection between Plaintiff's protected activity of complaining about Mr. Ruzic's behavior and Defendant's selection for termination.

151.    Mr. Ruzic was a management official.

152.    Upon information and belief, Mr. Ruzic knew that federal law prohibits retaliation for employee complaints to management officials of discrimination based on race, color, and national origin.

153.    Mr. Ruzic acted with malice and reckless indifference to Plaintiff's federally protected rights justifying an award of punitive damages against Defendant.

154.    Plaintiff suffered damages because of Defendant's unlawful act.

## COUNT FIVE

### 43 Pa. C.S. § 951 *et seq.* – VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (PHRA) AGAINST DEFENDANT ROSENBERGER N.A.

### (DISPARATE TREATMENT FOR RACE/COLOR/NATIONAL ORIGIN)

155.    Plaintiff incorporates by reference paragraphs 1 through 155.

156.    Defendant Rosenberger's unlawful and discriminatory discharge of Plaintiff because of his race, color, and national origin violates the provisions of the PHRA justifying an award, *inter alia*, of back pay, front pay, benefits, and compensatory damages against Defendant.

## COUNT SIX

### 43 Pa. C.S. § 951 *et seq.* – VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (PHRA) AGAINST DEFENDANT ROSENBERGER N.A.

### (RETALIATION)

157.    Plaintiff incorporates by reference paragraphs 1 through 156.

158.    Defendant's unlawful and retaliatory discharge of Plaintiff because of Plaintiff's complaint of race, color, and national origin discrimination violates the provisions of the PHRA justifying an award, *inter alia*, of back pay, front pay, benefits, and compensatory damages against Defendant.

**WHEREFORE**, Plaintiff respectfully prays for judgment against the Defendant Rosenberger North America LLC as follows:

    a.   For a declaratory judgment that Defendant's actions complained of herein violate Title VII, §1981 and the PHRA;

    b.   For injunctive and equitable relief prohibiting Defendant from engaging in discriminatory and retaliatory practices;

    c.   For a money judgment including monetary damages, including back pay, front pay and all other sums of money, including other employment benefits;

    d.   For compensatory damages;

    e.   For punitive damages under Title VII and 42 U.S.C. §1981;

    f.   For pre-judgment interest;

    g.   For reasonable attorneys' fees, expert witness fees, costs and all other relief permitted by Title VII, §1981 and the PHRA; and

    h.   For such other relief as the Court deems just and appropriate.

**TRIQUETRA LAW ®**
Respectfully submitted,

Dated: 5/14/2019

Andrea C. Farney, PA ID 204317
Attorney for Plaintiff
The Offices at Marion Court
35 East Orange Street, Suite 301
Lancaster, PA  17602
(717)  299-6300 (Telephone)
(717)  299-6338 (Fax)
Farney@TriquetraLaw.com